UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                                              06 CR. 0591 (RPP)

                 - against -

**OPINION AND**
VICTOR MARTINEZ,                                                 **ORDER**

                                              Defendant.
------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       On September 7, 2007, the Court made an oral ruling on the Government's mid-trial motion to close the courtroom to the public during the testimony of one witness. This edited opinion is issued to elaborate on the Court's reasoning for its decision.

       The Government seeks closure of the courtroom during the trial testimony of an undercover officer who works primarily in the Bronx. In this case, the Court will apply the test for closure in Waller v. Georgia, 467 U.S. 39 (1984). Under Waller, four prongs must be met in order for the courtroom to be closed during trial testimony: 1) the proponent of courtroom closure "must advance an overriding interest that is likely to be prejudiced; 2) the closure must be no broader than necessary to protect that interest; 3) the trial court must consider reasonable alternatives to closing the proceeding; and 4) it must make findings adequate to support the closure." Id. at 48.

       The evidence here shows that the state has an overriding interest in closure during the undercover officer's testimony. See Rodriguez v. Miller, No. 04-6665, 2007 WL 2445120, at *6 (2d Cir. Aug. 19, 2007) ("It is clear that the State has an 'overriding interest' in protecting the identity of its undercover officers."); Brown v. Artuz, 283 F.3d

492, 501 (2d Cir. 2002) ("The safety of a police officer working undercover surely constitutes an overriding interest."); Ayala v. Speckard, 131 F.3d 62, 72 (2d Cir. 1997) ("The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest . . . ."). The undercover officer has worked regularly in that capacity in the Bronx for several years. He is currently engaged in investigations in the Bronx, reasonably near the area of his sixty or more undercover drug purchases involved in this case, which took place in the vicinity of Kelly, Beck, and Fox Streets in between Longwood Avenue and 156th Street. Unless some measures are taken by the Court, he could easily be identified by members of the audience who, as family, relatives and friends of the Defendant, probably come from the same area and in all probability travel to surrounding areas in the Bronx.

Nonetheless, a general concern for an officer's safety, without a showing of facts that tend to support the officer's fear, does not justify the closure of a courtroom. See Brown, 283 F.3d at 501 ("Of course, the mere invocation of officer safety does not justify the closing of a courtroom. . . . [A]n officer must show facts that tend to support his fear."); Ayala, 131 F.3d at 70 ("We believe the sensible course is for the trial judge to recognize that open trials are strongly favored [and] to require persuasive evidence of serious risk to an important interest in ordering any closure . . . ."). There is no evidence that the undercover officer who works in the Bronx, but no longer in close proximity to Kelly, Beck, and Fox Streets in between Longwood Avenue and 156th Street, would likely come in contact with the members of the audience. Indeed it is difficult to see how the Government would establish the likelihood of such contact. The record here is not

sufficient to show that the state's interest in closure "would likely be prejudiced" if no closure occurred. Waller, 467 U.S. at 48.

There is no evidence that any member of the audience has identified a witness or taken action against a witness in criminal proceedings. True, a large majority of the twenty to thirty persons who have regularly attended the trial do not appear to be family members, are relatively young males, do not appear to have employment requiring their appearance elsewhere, and could likely be attending for witness intimidation purposes. One trial witness was fearful enough so that special arrangements were made for him to leave through the well of the courtroom and to exit from the rear of the Court. This does not constitute evidence, however, that any member of the audience is a person likely to take action against the undercover officer.

For these reasons, the Court has rejected its own suggestion to exclude non-family members of the audience. There is an insufficient record to identify these persons as likely to expose the undercover officer, or as persons likely to present a danger to the undercover officer or his family. There is no evidence that any of the persons in the audience would present such a threat.

Any restrictions within the courtroom, such as placing screens between the audience and the witness, are also fraught with difficulty. It is true that, in Rodriguez, the Second Circuit held that the state court did not unreasonably apply "clearly established federal law" when it closed the courtroom to the public but allowed the defendant's family to attend the undercover's testimony behind a screen. Rodriguez, No. 04-6665, 2007 WL 2445120, at *2. The defendant, fearing prejudice to his defense, "objected to the screen and instructed his family not to attend his trial." Id. at *3. "Clearly

3

established federal law," as defined in the AEDPA, 28 U.S.C. § 2254, refers only to the holdings of the Supreme Court and not its dicta. Carey v. Musladin, 127 S. Ct. 649, 653 (2006); Williams v. Taylor, 529 U.S. 362, 412 (2000). Nor does it include the precedents of circuit courts that flesh out Supreme Court decisions. Rodriguez, No. 04-6665, 2007 WL 2445120, at *5 (citing Musladin, 127 S. Ct. 649).

This is a federal criminal trial, not a state court trial, and as such is not reviewed for the reasonableness of a state court proceeding under AEDPA. The federal law this Court seeks to apply must be discerned in large part from circuit court and Supreme Court dicta. In this case, the undercover officer had no interactions with the Defendant, and thus the Defendant would not be deprived, in a sense, of his right to confront the witness against him. Instead, the witness will testify about actions and statements of conspirators made in the course of the conspiracy, which demonstrate the nature of the conspiracy and corroborate the Defendant's status as a co-conspirator.

In Yung v. Walker, 468 F.3d 169 (2006), the Second Circuit stated it would be an unreasonable interpretation of Waller for a court to exclude a defendant's relatives "if the exclusion of that particular relative, under the specific circumstances at issue, is not necessary." See also Carson v. Fischer, 421 F.3d 83, 91 (2d Cir. 2005) (stating that the "Court takes very seriously a defendant's right to have family and friends present at trial"); Guzman v. Scully, 80 F.3d 772, 776 (2d Cir. 1996) ("The exclusion of courtroom observers, especially a defendant's family members and friends, even from part of a criminal trial, is not a step to be taken lightly"); Vidal v. Williams, 31 F.3d 67, 69 (2d Cir. 1994) (stating that closing a courtroom "to a defendant's relatives as long as the

4

relatives live (or, presumably, work) in the county where the undercover officer operates . . . would violate the rule that closure is reserved for rare circumstances").

The Court has considered placing a screen in front of the undercover officer so that the jury, the Defendant, and his attorney, but not the audience, could observe the witness during his testimony.[1] This alternative, however, would contravene precedent of this Circuit. According to the Second Circuit, while it is not an unreasonable application of Waller to require the defendant's relatives to remain outside the courtroom unless they agreed to sit behind a screen, Rodriguez v. Miller, No. 04-6665, 2007 WL 2445120, at *6 (2d Cir. Aug. 19, 2007), such an order may indeed violate the defendant's Sixth Amendment right to a public trial under Second Circuit precedent, Rodriguez v. Miller, 439 F.3d 68, 73-76 (2d Cir. 2006), vacated, Miller v. Rodriguez, 127 S. Ct. 1119 (2007), remanded to 2007 WL 2445120 (2d Cir. Aug. 19, 2007) (reconsidering the previous decision in light of Carey v. Musladin, 127 S. Ct. 649 (2006)).

The Court thus concluded the only reasonable alternative to closure which could meet Second Circuit standards is for the witness to testify in disguise. See Ayala v. Speckard, 131 F.3d 62, 77 (2d Cir. 1997) (Parker, J., dissenting) (noting that testifying in disguise is a possible alternative). Accordingly, it will allow the undercover officer to testify in disguise, but without dark glasses so that the Defendant and jury can observe his eyes, his facial reactions to questions, and his body language. See Morales v. Artuz, 281 F.3d 55, 60 (2d Cir. 2002) (noting that to the extent the right of confrontation "assures an opportunity for the defendant and especially the jurors to see the witness's eyes in order to consider her demeanor as an aid to assessing her credibility, a witness's dark

---

[1] The plausibility of using a screen would depend on the courtroom's configuration. While it may have been plausible to use a screen in this courtroom, it may not be possible in other courtrooms that are configured differently.

5

sunglasses created "some impairment"); see also Maryland v. Craig, 497 U.S. 836 (1990) ("[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."); Coy v. Iowa, 487 U.S. 1012, 1021 (1988) (stating that any exception to face-to-face confrontation between the defendant and a witness "would surely be allowed only when necessary to further an important public policy").

IT IS SO ORDERED.

Dated: New York, New York
*Nunc pro tunc* September 7, 2007

Robert P. Patterson, Jr.
U.S.D.J.

Copy of this Opinion and Order given to:

*Counsel for Defendant*

Samuel Braverman
901 Sheridan Avenue
Bronx, NY 10451
Tel:   718-293-1977

*For the Government*

Michael J. Garcia, United States Attorney
Southern District of New York
Attn:   Christopher Lavigne, A.U.S.A.
        John Zach, A.U.S.A.
One St. Andrew's Plaza
New York, NY 10007
Tel:   212-637-2325 / 2410